Good morning, Your Honors. Jason Carr, appearing on behalf of Petitioner Appellant Kelly Lee Tanner. With the Court's leave of the Court, I intend to reserve a minute or two of my time for rebuttal. I am sometimes criticized for being overly loud and brash, but that may work in my favor here today. Going well. I'm going to focus on what I believe to be the heart of the matter on appeal here, which relates to the first assignment of error raised in our opening brief, which is whether or not Kelly Lee Tanner was constitutionally deprived of his right to a direct appeal from his conviction. More specifically, what we need to focus on here was, was there a duty to consult? Was the duty to consult, as articulated, the parameters thereof in Roe v. Flores-Ortega, was that duty to consult triggered? Did Mr. Kopchinsky, the trial counsel, have the obligation to sit down with his client after Mr. Tanner was sentenced to two life terms of imprisonment without the possibility of parole, to sit down with him and talk to him about what happened at sentencing, what happened throughout the course of the case, and whether or not Mr. Tanner should appeal? That's really what the focus point of this case is at this particular time. There are affidavits in the record, Mr. – there is no dispute here as to whether or not Mr. Kopchinsky did consult with Tanner because Kopchinsky filed an affidavit saying, no, I did not. I did not advise him of his right to appeal. I did not consult with him regarding this issue. What would he have appealed on? That's a good question, Your Honor, a very good question. Before I answer that really fast, I just want to segue. Whether or not there are meritorious grounds to appeal is part of the calculus of decision as to whether or not there's a duty to consult. But it's not the sole ground. In Flores-Ortega, the Supreme Court – Well, do you want to answer my question? I am going to, Your Honor. I'm sorry. Eventually. Why don't you answer it? There are two primary grounds that I could see that Mr. Kopchinsky should have consulted Mr. Tanner about regarding appealing. The first that I see is, in this case, there was a plea agreement. Mr. Tanner pled guilty to all the counts in the information, pled guilty to murder in the first degree. The only benefit he received for pleading guilty, in reality, was that the state agreed to go with the recommendation of the Office of Parole and Probation. Well, now, okay, it wasn't a death case, right? No, it wasn't, Your Honor. All right. But the benefit, just so that I understand, because he said he didn't want to put the family through it, but he pled as charged. But the court could have given him sentences that would have allowed parole, right? Yes, Your Honor. As opposed to – but, in fact, he got sentences that were – he got two life without possibility of parole sentences, correct? So that was what – that was his bargaining area, and he knew that, were not – Yes. So if he had a – you know, if there was any benefit, it was maybe you've – you know, maybe you'll get a sentence where, way down the line, you could possibly be eligible for parole. But also, you may get two life without possibility of parole sentences. And you're correct, Your Honor, but he would have received that same sentencing calculus possibility had he pled straight up. The benefit that the state gave him in his written plea agreement was that we will go along with whatever probation and parole recommends. So if probation and parole had recommended life with the possibility of parole, the state agreed – They wouldn't fight it. Exactly. And so, as opposed to they – otherwise, they could fight it. Exactly. And so, my estimation of this plea – Does that mean the judge would have to go along with it? No, no. It doesn't, right? No. In my estimation of this written plea agreement, that was the real benefit Tanner received for pleading guilty. This ties into the issue – and I'm sorry it's taking me so long to answer your question, Judge Newton. At sentencing, on ER – on ER Excerpt for Record 124, defense counsel talks about how there are errors in the pre-sentence report. Specifically, Tanner specifically denies that he engaged in this pattern of domestic violence and battery on the victim who happened to be his wife, who was his wife. He makes factual objections to the PSR. He says the PSR is inaccurate. The state PSR, the Office of Probation and Parole, recommended that Tanner receive a sentence of life without the possibility of parole. This issue – if the PSR was inaccurate, if probation and parole information had incorrect information that they used to make that recommendation, that's a salient point to take up on appeal. You think the Supreme Court of Nevada would have taken that? Excuse me, Your Honor? This was in Nevada, wasn't it? Yes, it was. Would the Supreme Court of Nevada have given any weight to that? Well, Your Honor, the Nevada Supreme Court in a case that's cited in our reply brief, a 2006 case, does say that certain areas that are not – certain errors that are not noticed can be appealed. And in this case, defense counsel, although he didn't make a specific objection, the PSR is incorrect, he does say on page 124 that the PSR is inaccurate. Do you cite a case where the Supreme Court of Nevada reversed the sentence because of an error in the sentencing report? You know, Your Honor, I don't have that exact citation available for you, and I apologize for that. What citation? Well, Your Honor, in our reply brief, we do cite a 2006 case which talks about unnoticed errors and that there is clear – It's a noticed error, you say. Right. That the right to have a plain error review of a sentence. And there are Nevada Supreme Court opinions where a sentence is overturned because the judge abuses his discretion in imposing the sentence. I'm asking you about a mistake in the pre-sentence report. Your Honor, I would be happy to file a supplemental brief to search out and point out that case. I filed a brief and you didn't find any. I didn't. I was not prepared for that exact question. I should have been, Your Honor. I apologize. Are we reviewing this under ADEPA? Yes, we are, Your Honor. What's the Supreme Court case that would make us reverse? Well, Your Honor, the fundamental bedrock case is Strickland v. Washington. In fact, there's – Well, I mean, yeah, that's a very general case. And to argue that Strickland governs here is – well, it's a stretch. Sometimes I see what you mean, but it's a stretch. You know, I'm sorry. I may have missed something, but can you just tell me just very briefly what your answer was to Judge Noonan's question about what ground of appeal did he have? Two issues that I can see that – And none do you, have you? I did – Your Honor, I'm sorry. I'll be more – Well, I heard one that you said that there were errors in the PSR. Appeal errors that are in the PSR. Your Honor, the second issue that Tanner articulates and is articulated in our amended petition that I see as somewhat meritorious is a challenge to the Nevada deadly weapon enhancement. And that would be that the enhancement in a murder case, which doubles the sentence, and under Nevada law, any mechanism or item, physical item at all, that actually kills somebody becomes a deadly weapon. There is an argument, at least something that you'd want to talk to your client about, that that is nonsensical. Well, you make the argument about that two life sentences are cruel and unusual. That is correct. And – Alleged that, yes. And – all right. Well, we know that the Supreme Court has said that the death penalty isn't cruel and unusual. And that – but if you only have but one life to give, what is the practical, you know, the practical effect of – you have to show that it's not frivolous, right? Yes. Well – If you only have but one life to give and you get two life sentences, why is that not frivolous? Your Honor, if you – there is a pardons board mechanism in Nevada where you can appear before a pardons board post-conviction and ask to have one of your terms that's life without converted into life with the possibility of parole. So getting rid of one life with the possibility of parole could conceivably have benefit in the future. But this reminds me of a point I wanted to make here, which is – Well, but if he could get rid of the first one, then that would get rid of the second one automatically, wouldn't it? Not the deadly weapon enhancement, Your Honor. Okay. The life without the murder charge itself would still be valid. And we're talking here about a duty to consult. The give and take that the court is having with me, this is the kind of conversation you would have with your client. And Flores-Ortega does not say there's a duty consult only if there are meritorious issues. Just that there are reasonable grounds to believe that your client would want to talk about an appeal. I would say that in any case where your client has been sentenced to life without the possibility of parole, you would want to go talk to him about the right to appeal. Well, how long was it the first time that he wanted to talk about it when he tried to file an appeal? He – Wasn't it two years or something like that? Yeah, it was about two years, Your Honor. And what he alleges – How does that cut against him? What he alleges in his affidavit is that's the first time he found out about his right to appeal, that he talked to a prison jailhouse legal assistant who told him, oh, you could have appealed even though you pled guilty. Which brings me to one final point before I sit down here, Your Honors. It is interesting in this case that the Nevada Supreme Court held within the 30-day window that Tanner was allowed to file his notice of appeal in a case called Lozada v. Deeds, the Nevada Supreme Court held that in all cases, defense counsel has an absolute duty to consult with their client regarding the duty, regarding whether or not they want to file an appeal. That's not the Supreme Court of the United States. Excuse me, Your Honor? That is not the Supreme Court of the United States. No, it is not, Your Honor. But it is salient to the atmospherics of whether or not that was ineffective assistance. Thank you, Your Honor. I'm looking at what the United States Supreme Court has said. That would be Flores-Ortega. Thank you. All right. I'll give you a minute for rebuttal. May it please the Court, Counsel, my name is Robert Whelan. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. It is our position that no duty arose in this particular case for counsel to consult with Mr. Tanner regarding a direct appeal for several reasons, the first being that Mr. Tanner entered a guilty plea. The second reason being is that when Mr. Tanner entered his guilty plea, he was fully apprised of the possible penalties of which he was facing. The attorney, and I direct the Court's attention to excerpt of Record 10, stated that in part the defendant pled guilty in part because he did not want to put the survivors through the emotional aspects of the trial. I would also direct this Court's attention to the sentencing. The record reflects that Mr. Tanner stated in the pre-sentence investigation that he wished that he could get a death sentence. He said he was ready to pay for his crimes and that the Court should impose any sentence that it felt was fair. That appears in excerpt of Record 131. Mr. Tanner did express a certain degree of remorse. And he, the judge noted that he was not asking for leniency or mercy. Those are circumstances along with the fact that in the memorandum of plea negotiations what appears in excerpt of Record 88 where Mr. Tanner acknowledged, I understand that I have right to appeal from adverse rulings on pretrial motions only if the State and the trial court consent to my right to appeal. In the absence of such an agreement, I understand that any substantive or procedural pretrial issue or issues which could have been raised at trial are waived by my plea. Therefore, Mr. Tanner was aware of his right to appeal, that being the case under the circumstances of this case, Roe v. Flores-Ortega, indicating that the totality of circumstances test shows that or should be applied in determining whether or not the duty arose to consult in this case. In this case, there is no reason for Mr. Wishart, who represented Mr. Tanner or, excuse me, Mr. Kavchinsky, I beg your pardon, to have believed that Mr. Tanner would have wanted to appeal. The second prong of Roe requires the Petitioner to show that it is that there is a reasonable probability that he would have timely appealed. The only argument that has been presented in this case is the existence of non-frivolous issues, which we have demonstrated were waived, expressly waived, by the plea agreement itself or were waived by the fact that there weren't any objections at the time. In particular, examination of the sentencing transcript shows that there was discussion throughout the transcript, throughout the sentencing proceeding, with respect to aspects of the sentencing transcript. Neither Mr. Kavchinsky nor Mr. Tanner made any comment or any effort to correct anything at that particular point in time. What about the frivolous list of the two life sentences being cruel and unusual, two life without possibility of parole? Why is that not frivolous? Or why is that frivolous? Well, I would suggest, for the reasons Your Honor stated, it is a frivolous issue because, quite clearly, it is a constitutional sentence. The second point is, is he made no challenge to the Constitution. Well, I guess part of it is, is that he knew that he faced that possibility, and he accepted that possibility when he pled guilty. The other aspect of it is, is that at sentencing, when the judge afforded him his right of allocution, he asked him if he had anything to say, and he said, Judge, sentence me to whatever sentence you think is fair. And the judge went through great lengths to explain why he thought the life without the possibility of sentence was fair. Under those circumstances, no duty arose for Mr. Kavchinsky to advise Mr. Tanner of that possibility, nor can it be said that there's a reasonable likelihood he would have wanted to appeal, because he knew, going in to the sentencing hearing, that that's what he faced. That being the case, it simply cannot be said. It may not necessarily be a frivolous issue. I think it's as close to being frivolous as you can get, because it's very clear that it's a constitutional sentence. That's part of the calculus, too. Let me ask about something entirely different. You take the position in your brief that Forrest Ortega can't be applied because under Teague he'll be retroactive, right? Your Honor, my point is in the brief. Isn't that your position? It cannot be applied to these circumstances. This case. If the application in Roe v. Forrest Ortega is simply going to be, number one, counsel did not advise the defendant of his right to appeal, and there's merely the existence of nonfrivolous issues. Well, here's my question. If we were to agree with you, what law do we apply if we don't apply Forrest Ortega? I would suggest, Your Honor, that you would apply. Do we just apply just a general rule of Strickland, right? Well, Your Honor. Or somebody would have thought Strickland meant before Forrest Ortega was decided. Well, as I point out in my brief, Your Honor, there are three cases. Rodriguez v. United States, 1969 case. In that case, the Supreme Court declined to have counsel offer an explanation why he failed to perfect an appeal for a defendant who had pled guilty and had told his counsel, who had actually told his counsel to perfect an appeal. I would also direct this Court's attention to Carey v. Leverett, where the Court, citing a multitude of decisions, held that the failure of counsel to notify an individual of his right to appeal following a guilty plea does not in itself constitute ineffective assistance of counsel. Mr. Tanner pled guilty in 1994. And so we have to look at the law as it existed at that time. In the absence of an absolute doubt, in the absence of an absolute duty to advise the defendant of the right to appeal just because there might be non-frivolous issues, I don't believe there was that authority existed at that time. I would direct this Court's attention also to Pequero v. United States, where the cases you refer to is directly on point, right? What I'm saying, your – well, the point being, Your Honor, is, is that if Roe v. Flores Ortega is going to be construed as Petitioner Appellant construes it, he pled guilty. The fact that there are non-frivolous issues requires, and we're talking about 1994 now, if it's going to be construed in that fashion that because there's he pled guilty, he wasn't advised of his right to appeal, if the Court accepts that as the basis in light of the excerpt of the record here at 88, and simply the fact that there's merely the existence of non-frivolous issues, I think in that circumstance, Roe would be. Kennedy. What do you say, what do you say, merely non-frivolous issues? I mean, does it have to be like a slam-dunk issue you're going to win before you have the duty to advise counsel under Flores Ortega? Well, actually, I would suggest that Flores Ortega – Do you read Flores Ortega some other way as to saying if there's a non-frivolous issue, the counsel should advise his client of it? Your Honor, I would suggest that in 1994 – I'm just talking about how you read Flores Ortega. How I read it and how I think Petitioner and Appellant are reading it are two different things. How do you read it? I mean, you don't read Flores Ortega as saying if there are non-frivolous issues that could be pursued on appeal, that's not enough for counsel to be required to consult with his client? Is that the way you read Flores Ortega? The mere existence of non-frivolous issues does not in all circumstances require counsel – does not create a duty in counsel to consult with the client with respect to an appeal. If it's not a non-frivolous issue that would trigger that duty, what kind of issue is required to trigger that duty? A slam-dunk issue? I mean, a sure reversal is the only thing? Well, I would say it's certainly a better issue than what's been presented by Petitioner. I'm trying to think of one, Your Honor. Why do you resist this non-frivolous issue definition? What's a better definition as to what would, you know, ethically or, you know, constitutionally trigger a law? Well, it's hard to express, Your Honor, because the reason I'm having some trouble answering the question is that in Jones v. Barnes, which preceded Roe v. Flores Ortega's, counsel was not – is not – is not ineffective for failing to raise non-frivolous issues. That being the case, counsel even when – So that means what? That means Flores Ortega is a – right? I beg your pardon, Your Honor? That means Flores Ortega went one step beyond that case. And now it is non-frivolous issues. Right? I don't read it that way, Your Honor, because – Well, I mean – I mean, don't you think Flores Ortega, you know, went one step beyond that previous case? I'm not sure I understand. Well, you said the previous case said even if there's a non-frivolous issue, counsel doesn't have to raise it. That's right. And if counsel – But Flores Ortega, that's what I say, went one step beyond that case and does require counsel to raise a non-frivolous issue. You don't read Flores Ortega that way? I don't read Flores Ortega that way because Flores Ortega says what you have to do, it's a totality of the circumstances. And if you're going to extract or extinguish from Flores or – Roe v. Flores Ortega the requirement that you look at the totality of the circumstances, then there's – there's a significant problem there. My point being is Jones – if Jones v. Barnes says that appellate – I'm sorry. Do you want me to continue on? I see that I'm past time. You can answer the question since it's been asked. Yes. The point being is Jones v. Barnes says that appellate counsel is not required to raise all non-frivolous issues. That deals with appellate counsel. And if appellate counsel is not – it doesn't necessarily convert to a requirement that counsel who has to determine whether or not there's a duty to advise or consult with his client, it doesn't convert that just simply because there's the existence, there may be the existence of non-frivolous issues, he has a duty. Thank you for your time. Thank you. Thank you. I'll give you two minutes for rebuttal. I would note that regarding the issue of whether Flores v. Ortega, Roe v. Flores Ortega is a new rule, I would note that that case itself is a 2254 case that the Supreme Court took, and not only do they not talk about it being a new rule as they're – they talk specifically about the strict application of strictly to this particular set of facts. What was the result of Flores Ortega? In Flores Ortega, the Court – Unless you recall the circuit split or whether or not – What was the result of the particular – Factual findings, if I remember right. Yeah, well, what they did was overrule the judgment of the court of appeals, reversed it, remanded for further proceedings consistent with the – Why did they reverse the court of appeals? Because there was a per se rule that counsel had to consult with a defendant regarding the notice of appeal, and the heart of the issue in Flores Ortega was whether or not there was always this duty to consult. So you could say, you know, that the holding of Flores Ortega was not a per se rule and that everything else was dicta. You could say that, Your Honor. You could. That is the specific issue. And, in fact, the Flores Ortega opinion itself says the heart of the issue in this case is whether or not what triggers the duty to consult and whether or not there is a per se rule to always consult. And I also would note that the circuit authority is strongly against the State out-of-circuit authority, excuse me. There is a case, Lewis v. Johnson, Third Circuit, Frazier v. South Carolina, Fourth Circuit, which talks about whether or not Flores Ortega is a new rule under Teague and definitively holds that it is not. Those cases are cited in the reply brief, and I would ask the Court to review those cases if there's any question about that. Really, once we get to the substantive issue here, the issue becomes, was there a duty to consult? And the duty to consult is not just predicated upon the issue of whether or not there are non-frivolous grounds for appeal. What Flores Ortega itself says is that there's a duty, this is a quote, this is a quote, counsel has a constitutionally imposed duty to consult with a defendant about appeal when there is reason to think that a rational defendant would want to appeal. Then it says, for example, because there are non-frivolous grounds for appeal. That's one example of what would trigger counsel to believe that a reasonable defendant might want to appeal. I would submit that a reasonable counsel would think his client may want to appeal if he's facing life in prison without parole. And that it is, not only was that the clear law of Nevada at that time, but it's the way any reasonable defense counsel would comport himself. To not consult with your client regarding whether or not he's going to appeal when he's facing spending the rest of his natural life in prison is somewhat shocking, appalling. All right. Well, you've gone even over your over. So this matter will now be submitted. Thank you both for your argument. United States of America versus Juan Jose Morales, 06-15470. Thank you.
judges: Tashima, Callahan, Schiavelli